400 So.2d 133 (1981)
Robert HUFHAM, Appellant,
v.
STATE of Florida, Appellee.
No. 80-489.
District Court of Appeal of Florida, Fifth District.
June 17, 1981.
James B. Gibson, Public Defender, and Ronald K. Zimmet, Chief, Appellate Division, Asst. Public Defender, and Cynthia Karl-Stamm, Certified Legal Intern, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Edward M. Chew, Asst. Atty. Gen., Daytona Beach, for appellee.
ORFINGER, Judge.
Appellant was convicted of sexual battery of a person over the age of eleven *134 years by use of physical force not likely to cause serious personal injury.[1] He contends on appeal that the evidence is insufficient to sustain his conviction and that a comment by the prosecutor in closing argument is reversible error. We affirm.
Appellant moved for a judgment of acquittal at the close of the State's case, but did not renew the motion at the close of all the evidence or move for a new trial. Therefore, we determine only if the State presented sufficient evidence to establish a prima facie case. McGeorge v. State, 386 So.2d 29 (Fla. 5th DCA 1980). Resolving all conflicts and inferences in favor of the verdict, we find the evidence legally sufficient. Tibbs v. State, 397 So.2d 1120 (Fla. 1981); McGeorge, at 30; Florida Rule of Criminal Procedure 3.380(b).
Appellant first contends that the State did not submit sufficient evidence to show force and lack of consent, and relies on cases such as O'Bryan v. State, 324 So.2d 713 (Fla. 1st DCA 1976) and Johnson v. State, 118 So.2d 806 (Fla. 2d DCA 1960) for the proposition that a conviction for rape cannot be sustained in the absence of proof beyond a reasonable doubt that the offense was established by force and that it was against the will of the victim. These cases are of little assistance to us, however, because they were decided under an old statute[2] no longer in effect at the time of the offense here.
On October 1, 1974, section 794.011, Florida Statutes, went into effect, describing and proscribing the crime of sexual battery. Whereas the old statute did not divide the crime into degrees (except insofar as it pertained to children under the age of eleven years), the new statute does.[3] For example, subsection (3) of the current statute describes sexual battery as a life felony where the offense is committed without the victim's consent and where the offender uses or threatens to use a deadly weapon or uses actual physical force likely to cause serious personal injury.[4]
In the instant case, appellant was charged under section 794.011(5), Florida Statutes (1979), which provides:
A person who commits sexual battery upon a person over the age of 11 years, without that person's consent, and in the process thereof uses physical force and violence not likely to cause serious personal injury shall be guilty of a felony of the second degree... .
Thus, the degree of "force" required to be proved under this subsection will be less than the force likely to cause serious injury,[5] and how much "force" satisfies this requirement is essentially a question for the jury.
Appellant contends also that the evidence is insufficient to prove lack of consent by the victim. Under the old statute, if the exhibited or threatened force was not sufficient to put the woman "in fear of loss of life or other great danger," evidence of resistance was required to demonstrate the act was by force and against her will. Bailey v. State, 76 Fla. 213, 79 So. 730 (Fla. 1918); Hollis v. State, 27 Fla. 387, 9 So. 67 (1891); O'Bryan v. State, 324 So.2d 713 (Fla. 1st DCA 1976); Johnson v. State, 118 So.2d 806 (Fla. 2d DCA 1960). Thus, in the absence of strong resistance, the described *135 acts did not sufficiently establish lack of consent. These cases no longer represent the legislative policy of the state.
Under the old statute, it was held that resistance of the victim (so as to demonstrate non-consent) was a relative term to be viewed under the circumstances of each case:
The amount of resistance required depends on the circumstances, including the relative strength of the parties, the age and condition of the female, the apparent uselessness of resistance, and the degree of force manifested. It is only necessary that the resistance of the female be such as to make non-consent and actual resistance real, under the circumstances prevailing.
Thomas v. State, 167 So.2d 309, 310 (Fla. 1964).
Section 794.011(1)(h) of the new statute defines consent as the "intelligent, knowing and voluntary consent and shall not be construed to include coerced submission." Thus we hold that here, too, "consent" is a relative term to be viewed under the circumstances of each case, but by the standards established by the new statute, rather than the old, and this, too, is essentially a question for the jury.
The evidence submitted by the State reflects that the victim, an 18 year old female, was entered in a disco dance contest at a local restaurant. She wore a costume and heavy makeup. While the contest was in progress, appellant propositioned her through her dance partner, but she refused. Appellant then suggested to her and her partner that he had some cocaine which they could share, so she went outside with appellant, expecting her partner and her brother to be close behind. She testified that the only reason she entered appellant's car was that her brother and her dance partner had told her they would join her momentarily. She further testified that after she got in the car, appellant started it and drove into the woods on a dirt road behind the restaurant. Sensing something amiss, she lit a cigarette and planned to use it to effect her escape, but appellant grabbed it and threw it out of the window before she could use it against him. When appellant heard her brother and her dance partner calling to her from the parking lot, appellant became violent and pressed his hand over her mouth and nose. She had trouble breathing while appellant kept his hand over her mouth for approximately a minute until the calling for her stopped. She attempted to struggle, but stopped because she was afraid to get hurt when appellant stated, "you better keep your ... mouth shut or something will happen to you." After appellant violently shook her, she got into the back seat of the car and took her clothes off because she was frightened. She testified that she resisted, but she was scared because he threatened her. After the episode ended, appellant drove her back to the restaurant and she immediately reported the crime to the manager of the restaurant and called the police. She testified that at that time she was frightened, crying and in pain. She had scratches on her arms and back. Finally, she testified that she obeyed his commands because she was afraid she would have been killed if she had resisted.
The victim's dance partner testified that when the victim reentered the restaurant, her hair was "messed up" and she was in a hysterical state. He testified that she had her clothes on backwards and she said that she had been raped. He also testified that when she came back into the restaurant, he noticed that there was a handprint in her makeup over a portion of her lips and nose.
The evidence appears to be sufficient to make a prima facie case under the section of the statute charged in this case. Appellant says that the testimony of the victim is conflicting and is not credible on the issue of force and lack of consent, but he addresses this issue to the wrong tribunal. It was for the jury to determine the credibility of the witnesses and the victim, as well as of the defendant who testified here. Once competent, substantial evidence has been submitted on each element of the crime, it is for the jury to evaluate the evidence and the credibility of the witnesses. *136 State v. Smith, 249 So.2d 16 (Fla. 1971). We do not have the authority to reevaluate the weight of the evidence. Tibbs, supra.
Appellant contends that the prosecutor improperly commented on his right to remain silent during closing argument.[6] We think the comment was improper, because reserving opening statement is a recognized privilege of defense counsel. Thus this comment may be compared to the remark as to defense technique and "how defense lawyers operate" criticized in Cochran v. State, 280 So.2d 42 (Fla. 1st DCA 1973).
It is the duty of a prosecuting attorney in a trial to refrain from making improper remarks or committing acts which would or might tend to affect the fairness and impartiality to which the accused is entitled.
Id. at 43.[7] However, we deem the error not reviewable for several reasons. First, the ground of the objection was not specified below. To meet the objectives of any contemporaneous objection rule, an objection must be sufficiently specific both to apprise the trial judge of the putative error and to preserve the issue for intelligent review on appeal. Castor v. State, 365 So.2d 701, 703 (Fla. 1978). Additionally, even the ground asserted here does not sustain a reversal. The comment was made in closing argument after defendant had testified, so it could not be a comment on his right to remain silent. Appellant made no further objections to the comment.
The judgment of conviction is AFFIRMED.
COBB and FRANK D. UPCHURCH, Jr., JJ., concur.
NOTES
[1] § 794.011(5), Fla. Stat. (1979).
[2] Prior to October 1, 1974, the rape statute, § 794.01, provided:

"(2) whoever ravishes or carnally knows a person of the age of eleven years or more, by force and against his or her will, ... shall be guilty of a life felony... ."
[3] Section 794.011, Florida Statutes, describes various degrees of the crime from a capital felony to a felony of the second degree, depending on the age of the victim and the degree of force used by the offender.
[4] Serious personal injury is defined in the statute as "great bodily harm or pain, permanent disability or permanent disfigurement." § 794.011(1)(e).
[5] The legislative intent to divide "force" into various degrees and separate crimes is also demonstrated by provisions of the statute which require only the threat of force and the reasonable belief by the victim that the offender has the present ability to carry out the threat. § 794.011(4)(b). Cf. Carter v. State, 380 So.2d 541 (Fla. 5th DCA 1980).
[6] ... Also there was something else. When we started this trial I got up here and told you in my opening statement everything the evidence would show. I told you in the most minute detail. That man when given his opportunity, he waived his opening statement, he could have told you at that time 
(Defense Counsel): ... Your Honor, I am going to object 
THE COURT: The objection is over-ruled.
(Prosecutor): He could have told you every detail of what his story was going to be. During the cross-examination of the State's witnesses did you have one hint of what the defendant's testimony was going to be? Well, you know the reason why is because that man sat back there and waited until the evidence was all in and fabricated a story based solely on that evidence.
[7] In Cochran, the error was found to be harmless in view of the evidence.